IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2001

## WILLIAM R. DIAZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Anderson County**
**No. AOCR0008     James B. Scott, Jr., Judge**

_____

**No. E2001-00661-CCA-R3-PC**
**June 27, 2002**
_____

The petitioner, William R. Diaz, appeals the Anderson County Criminal Court's denial of his petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. He contends that his trial attorney was ineffective for (1) failing to file a motion to suppress his statement to the police on the grounds that it was coerced and (2) failing to file a motion to suppress evidence that the police took from his garage without a search warrant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Mart S. Cizek, Clinton, Tennessee, for the appellant, William R. Diaz.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James N. Ramsey, District Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the shootings of the petitioner's girlfriend, Linda Arthur, and her daughter, Terri White. The record reflects that a jury convicted the petitioner of the attempted second degree murder of Ms. Arthur and the second degree murder of Ms. White. The trial court sentenced him as a Range I, standard offender to an effective sentence of twenty-two years in the Tennessee Department of Correction, and this court upheld the convictions on direct appeal. See State v. William Robert Diaz, No. 03C01-9610-CC-00375, Anderson County (Tenn. Crim. App. May 1, 1998).

At the evidentiary hearing,[1] Penny Baker, Chief of Detectives for the Anderson County Sheriff's Department, testified that on June 6, 1994, she was dispatched to the house shared by the petitioner and Ms. Arthur. She said that there had been a scuffle in the house and that a bedpost in the bedroom had been broken and that a stereo in the living room had been knocked onto the floor. She said she searched the house but not the garage. She said that other officers found the murder weapon in the kitchen but that she did not recall where officers found a log book. She said that the police never obtained a warrant to search the house or the garage. She said that police officers found the petitioner at a neighbor's house and took him to the sheriff's department for an interview. She said the petitioner was in custody for three or four hours before the police interviewed him, and she acknowledged that he was cold and shaking during the interview.

The petitioner's trial attorney testified that the petitioner gave a statement to the police and that he filed a motion to suppress the statement on the grounds that it was given in violation of the petitioner's Fifth Amendment right to counsel. He said that when the trial court denied the motion, the statement became a part of the defense's theory because in the statement, the petitioner alleged that he shot the victims in self-defense. He said that even if the trial court had suppressed the petitioner's statement, the defense's self-defense theory would not have changed.

The attorney testified that the police audiotaped the petitioner's statement and that on the tape, the petitioner sounded like he was emotionally upset and shaking. He said that at trial, there was testimony about the petitioner being cold during his interview with police and about someone offering to get the petitioner a cup of coffee. He said he also thought someone testified at trial about volunteering to get the petitioner a blanket. He said that during his conferences with the petitioner, the petitioner did not emphasize to him that the petitioner gave his statement because he was cold.

The attorney testified that he did not recall the petitioner's log book or documents from the log book being introduced as evidence at trial. He said he did not file any pretrial motions regarding the police searching the petitioner's home because he did not have any indication that the state was going to introduce any of that evidence. He said that when the police and paramedics entered the petitioner's home, the murder weapon was in plain view.

The attorney testified that he did not interview the petitioner's sons because they did not witness the shootings and because their mother, the petitioner's ex-wife, was uncooperative. He said that he did not call the petitioner to testify at the hearing to suppress the petitioner's statement because he was afraid the petitioner would acknowledge reinitiating the conversation with the police. He said, however, that the decision of whether to testify at a hearing was usually made by a defendant. He said that the petitioner received a psychological evaluation and was prescribed Valium and Prozac. He said that he called four or five witnesses during the petitioner's case in chief.

---

[1]The petitioner's brief fails to detail any of the facts developed in the trial court that relate to his claims and that are required on appeal. See T.R.A.P. 27(a)(6). We appreciate counsel for the state assuming this responsibility.

On cross-examination, the attorney testified that at the time of the petitioner's trial, he had been trying criminal cases since 1978 and had tried fifty to one hundred jury trials. He said that of those trials, seven to ten were homicide cases. He said that during his representation of the petitioner, the petitioner was cooperative and that they got along well together. He said it was never brought to his attention that the petitioner's being cold had anything to do with the petitioner's giving a statement to the police.

The petitioner testified that on the night of the crimes, he was arrested about 10:45 p.m. and taken to the police station. He said that about 11:00 p.m., the police locked him in a steel room. He said he remained in the room, which was freezing cold, for five to six hours. He said that the police took his shoes and socks and that he was wearing only a pair of shorts and a thin shirt. He said that at 4:00 a.m., the police gave him a breathalyzer test and took him downstairs for an interview. He said he was incoherent and "freezing to death." He said that he requested a blanket but was told that he could not have one because he was on a suicide watch. He said that, at first, he refused to talk to the police or sign a waiver of rights form. He said that when the police told him that they were going to take him back upstairs, he gave a statement. He said that "all I could think of was going back in that hole. And it was freezing and I was miserable and I was sick to my stomach at that point in time, and I don't think I really knew what was going on."

The petitioner testified that after the shootings, doctors put him on several medications that turned him into a "zombie" and kept him from properly assisting his attorney. He said that his attorney did not allow him to testify at his suppression hearing and that he did not recall his attorney telling him that he had a right to testify at the hearing. He said that his attorney may have told him that it was his choice as to whether or not to testify at the hearing but that his attorney told him there was no need for him to testify. He said he testified at trial.

The petitioner testified that the police never asked to search his home. He said that the police took his log book from a file cabinet in the garage and that the state "tried to introduce that as evidence in the courtroom." He said that on the night of the shootings, nothing involving the crimes had taken place in the garage.

On cross-examination, the petitioner testified that the house he and Ms. Arthur lived in was owned by their corporation. He said that although he was on bond for ten months before his trial, he was unable to get any of his personal property out of the home.

The trial court denied the petitioner's petition for post-conviction relief. In its order, the trial court determined that the petitioner's trial attorney fully addressed the issues surrounding his statement to police. The trial court also found that the issue regarding the petitioner's "physical and mental state, including the temperature of the room under which this statement was made, were fully addressed by the proof and witnesses who testified" at the suppression hearing. As to evidence that was collected at the crime scene, the trial court noted that the house the petitioner shared with Ms. Arthur was either corporately owned or owned jointly by Ms. Arthur and the petitioner, and,

therefore, the seizure of evidence from the home did not support the petitioner's claim that his Fourth Amendment rights were violated.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). We review the trial court's conclusions of law under a purely de novo standard. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

## I. COERCED STATEMENT

The petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to allege in the motion to suppress that police coerced him into giving his statement by subjecting him to a "cold steel room, akin to a refrigerator." The state claims that the petitioner has failed to demonstrate that his confession was coerced or that he was prejudiced by his attorney's failure to raise this issue in a motion to suppress. We believe that the petitioner has failed to show that he received the ineffective assistance of counsel.

Even assuming, for argument's sake, that the petitioner could demonstrate that his trial attorney rendered deficient performance by failing to allege this issue in the motion to suppress, the petitioner has failed to show that he was prejudiced by the deficiency. The petitioner's trial attorney

testified that the petitioner's statement formed the basis of the defense's theory that the petitioner acted in self-defense. Furthermore, he stated that this theory of self-defense would not have changed even if the trial court had suppressed the petitioner's statement. The petitioner has failed to demonstrate how he was prejudiced by his trial attorney's failure to allege that his statement to police was coerced.

## II. ILLEGALLY SEIZED EVIDENCE

Next, the petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to file a motion to suppress evidence that the police took from his home without a warrant. Specifically, he claims the police illegally took a log book from a file cabinet that was in his garage. The state claims that the defendant has failed to show that he received the ineffective assistance of counsel. We agree with the state.

Detective Baker did not testify about the log book, and the petitioner's trial attorney testified that he did not recall the log book or its documents being introduced into evidence at trial. Moreover, the petitioner only testified that the state "tried to introduce" the log book into evidence. The petitioner has not demonstrated that he was prejudiced by his attorney's failure to file a motion to suppress it. Again, the petitioner is unable to show that he is entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE